UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  4:19 CR 948 AGF |
| | ) |
| HARVEY THOMAS GAMMON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the undersigned United States Magistrate Judge on Defendant Harvey Gammon's Emergency Motion for Pretrial Release Due to Public Health and Safety Threat Posed COVID-19 Pandemic; Additionally, Emergency Motion for Reconsideration Due to Lack of Predicate Elements to Deny Pre-Trial Release [Doc. 30].  The United States opposes the motion [Doc. 32]. Gammon filed a reply to the Government's response [Doc. 36]. Gammon has in effect filed two motions.  His first motion is for release due to the COVID-19 pandemic, and the second motion is for reconsideration of this Court's detention order. The Court will address each motion separately.  For reasons set forth below, Gammon's motion for temporary release due to the COVID-19 pandemic will be granted and the motion for reconsideration of the detention order will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant Harvey Gammon was charged by indictment with being a felon in possession of a firearm.  When he was arrested the United States filed a Motion for Pretrial Detention and Hearing [Doc. 4].  A Report of Pretrial Services recommended that Gammon be detained pending trial.  The undersigned held a detention hearing on February 12, 2020.  Defendant was

1

present and represented by Attorneys Craig Brand and Eric Boehmer.  The United States was represented by Assistant United States Attorney J. Christian Goeke.

The undersigned heard testimony from a St. Charles County law enforcement officer who described the circumstances of Gammon's arrest in St. Charles County.  Gammon, who was previously convicted of a felony was arrested after a traffic stop because he had four firearms and an estimated 1500 rounds of ammunition in his truck.  Gammon was traveling back to his home in Colorado after attending advanced firearms training in Kentucky.  At the hearing, Gammon's attorneys proffered information regarding Gammon's activities at the firearms training.  However, the Court did not find the information presented regarding his activities at the training to be credible.

 Following that hearing, Gammon was ordered to be detained pending trial [Doc. 23].  In the detention order the Court found by clear and convincing evidence that there were no conditions or combination of conditions that would reasonably assure the safety of the community.

On April 3, 2020 Gammon filed the instant motion.  As stated previously, the Court is treating Gammon's submission as two motions.  In the first motion, Gammon requests immediate release pursuant to 18 U.S.C. § 3142(i).  In the second motion, he asks for reconsideration of the detention order, stating "The Defense asks that this decision now be revisited as an Emergency." (Doc. 30, p. 9). Gammon does not cite to any statutory authority for the undersigned to revisit the detention decision as an emergency, but this motion will be analyzed as a motion for reconsideration pursuant to 18 U.S.C. § 3142(f)(2).

## LEGAL STANDARD

"A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He had only a judicial determination of probable cause as a prerequisite to [the] extended

2

restraint of [his] liberty following arrest." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979) (internal quotation marks and citation omitted). The government may detain someone on a federal offense to ensure his presence at trial and may subject him to the restrictions and conditions of detention so long as those conditions do not constitute punishment or otherwise amount to a constitutional violation. *Id*.

The Bail Reform Act of 1984 mandates every person charged with a federal offense be given a detention hearing. 18 U.S.C. § 3142(a). The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide for such assurances, the individual must be released, as detention is "the carefully limited exception." *Id.*; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987). If the judge finds the defendant poses a danger to public safety or a flight risk, the defendant may be ordered detained. 18 U.S.C. § 3142(f).

18 U.S.C. § 3142(f)(2) permits a judicial officer to reopen a detention hearing at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the detention hearing and *that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person and the safety of the community*.

Some district courts have considered requests for release from detention due to COVID-19 concerns in the context of the section 3142(f)'s pretrial detention framework and the related subsections (§ 3142(e)(2-3), statutory rebuttable presumptions; § 3142(g), Bail Reform Act factors). *See e.g. United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D.Md. Mar. 17, 2020) (defendant raised concerns regarding his underlying medical conditions of

3

asthma, high blood pressure and diabetes in that context); *United States v. Stephens*, ---F.Supp.3d---, 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. March 19, 2020) (court considered motion to reopen detention under section 3142(f) based on a change in circumstances with respect to speculative COVID-19 concerns, and reopening detention not only based on COVID-19 concerns, but relying on new information that weakened the Government's case and undermine the prior findings relative to detention).

Others have analyzed a request for release due to COVID-19 concerns under 18 U.S.C. § 3142(i) (citations set forth below). Section 3142(i) provides that a judicial officer may allow temporary release of a defendant if: (1) release is necessary for preparation of the defense; or (2) for another compelling reason.

A defendant's concerns that he faces heightened COVID-19 risk if incarcerated would not typically factor into a section 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). The risk of *harm to a defendant* does not usually bear on this analysis; rather, whether a defendant's particular circumstances warrant release in light of the COVID-19 pandemic is more properly considered on a case-by-case basis under section 3142(i). *See id.; United States v. Hamilton*, 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020).

Gammon states that this Emergency Motion is different from others that have been filed in light of the COVID-19 crisis because this motion is "the challenge to the Court's Denial of Pre-Trial Release for reasons set forth within 18 U.S. Code § 3142." He goes on to challenge basis for the detention order entered by the undersigned.  Specifically, he contends Gammon has

4

been held without the Government demonstrating the requisite elements needed to deny pretrial release.  He then asks that the detention decision be "revisited as an Emergency".

Insofar as Gammon moves for release under section 3142(f), the standard under section 3142(f) is that information exists that was not previously known that *has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person and the safety of the community*. As will be discussed *infra,* Gammon has not presented any credible evidence to ameliorate the Court's concerns that he is a danger to the community, so as to justify reopening detention under section 3142(f). Therefore, Gammon's Emergency Motion for Reconsideration Due to Lack of Predicate Elements to Deny Pre-Trial Release will be denied.

The court finds that the analysis is more appropriately conducted under section 3142(i); however, as will be discussed further below, the Court's inquiry will still take into account the original grounds for pretrial detention.

A defendant bears the burden of establishing circumstances warranting release under § 3142(i).  *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).  Like other judges who have addressed similar motions during the ongoing COVID-19 pandemic, the undersigned is mindful of the unprecedented magnitude of the current crisis and the extremely serious health risks it presents.  Indeed, in the past, courts used §3142(i) "sparingly to permit a defendant's release where, for example, [s]he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-cr-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted).  In deciding whether a defendant is entitled to release under §3142(i), courts have almost uniformly recognized that generalized COVID-19 fears and speculation, standing alone, are insufficient.  Although they have taken various approaches, courts have invariably made an individualized determination as

5

to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under §3142(i). *See United States v. Kennedy,* No. 5:28 CR 20315 JEL-EAS, 2020 WL 1493481, at *1 (E.D. Mich., Mar. 27, 2020) (defendant whose pretrial release had been revoked due to noncompliance with conditions such as reporting to pretrial, drug testing, and drug treatment was ordered temporarily released due to significant health risks if infected with COVID-19 and due to limitations placed on access to counsel as a result of federal, state, and local stay-at-home directives in response to the COVID19 pandemic); *United States v. Jones*, No. 1:17CR582 CCB, 2020 WL 1323109, at *1 (D. Md. Mar. 20, 2020) (detainee who alleged exposure to COVID-19 at another facility and who had underlying health conditions including pregnancy was not entitled to release because these considerations did not undermine need for detention based on §3142(g) factors); *United States v. Perez,* No. 19 CR 297 PAE, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (ordering defendant's temporary release due to serious health issues and other risk factors); *United States* v. *Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (denying appeal of detention order where defendant's risk factors of asthma, diabetes, and high blood pressure did not undermine the need for detention based on §3142(g)).

In tackling the question of whether a defendant should be released under §3142(i) in light of the COVID-19 pandemic, the court in *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *2-3 (D. Kan. Mar. 25, 2020) conducted an in-depth analysis of recent cases around the country and distilled the various facts courts have considered when weighing whether defendants should be released from custody. Based on that analysis, the court in *Clark* articulated four factors courts can use to evaluate whether a defendant has satisfied the "compelling reason" requirement under §3142(i):

6

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Id.*

The undersigned agrees with the analysis in *Clark* and finds that the foregoing factors capture the balance courts have tried to strike when weighing the rights of detained criminal defendants against the unique and unprecedented public health concerns caused by the COVID-19 pandemic and the public safety concerns that are at the heart of any analysis of release or detention under the Bail Reform Act.  As such, like other courts within the Eighth Circuit have done, the undersigned will apply the *Clark* factors to Gammon's case. *See United States v. Lonnie,* No. 4:19CR180 KGB, 2020 WL 1644495 at *2 (E.D. Ark., Apr. 2, 2020) (applying the factors articulated in *Clark*); *United States v. Dodd,* No. 20-CR-16 (NBB/HB), 2020 WL 1547419 at *3 (D. Minn., Apr. 1, 2020) (same).

## DISCUSSION

In his motion Gammon details the spread of COVID-19 across the globe and in Missouri. He correctly states that our country's jails have never confronted a global health pandemic like this one.  Gammon argues that Missouri's detention facilities are unequipped to prevent transmission of COVID-19 among detainees and staff or to isolate and treat individuals who become infected.  In his reply to the Government's response, Gammon states that the Ste. Genevieve jail has no testing for COVID-19; that inmates must purchase antibacterial soap and that there is limited access to hand sanitizer.  He also states that he has pre-existing health conditions that make him vulnerable to the risks posed by the virus.  Gammon claims to have

7

Type II Hypertension and asthma, although he has not provided any documentation of these conditions.

### Original Reasons for Detention

For a defendant seeking temporary release under section 3142(i), it has already been determined by a court that pretrial detention was warranted on the grounds that no condition or combination of conditions would reasonably assure the defendant is not a flight risk and/or would not pose a risk of harm to others. *Clark*, 2020 WL at 1446895, at *3. Therefore, the court takes into consideration whether the defendant has presented such compelling reasons that effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order. *Id*.

As set out above, Gammon is charged with one count of being a felon in possession of a firearm.  The strength of the evidence against Gammon is strong.  He was driving a truck through Missouri carrying four weapons, including two AR 15 semi-automatic rifles, and more than1500 rounds of ammunition including armor piercing bullets.  He had recently attended tactical advanced firearms training courses.  At the hearing, Gammon's attorney proffered that the lead instructor would testify that Gammon never used live rounds during the training.  I did not find Gammon's proffered evidence to be credible. Gammon was ordered detained because the weight of the evidence against him is strong; he is subject to a lengthy period of incarceration if convicted; and his criminal history includes a weapons charge.  Gammon has not presented any compelling reasons that sufficiently counterbalance the findings that originally justified the pretrial detention order.

8

As such, the first *Clark* factor—the original grounds for defendant's pretrial detention—favors detention.

**Specificity of Defendant's COVID-19 Concerns**

The Court now turns to Gammon's stated COVID-19 concerns.  Gammon raises generalized concerns regarding the impact COVID-19 may have on him if he is detained during this pandemic. Gammon asserts generalizations regarding prisons and detention facilities being at higher risk for an outbreak and presents a conclusory assertion that the Ste. Genevieve County Jail is not adequately prepared to prevent an outbreak, and that it is further unprepared to manage an outbreak once the virus enters the facility. Gammon contends that he is a greater risk of contracting COVID-19 given the lack of opportunity for social distancing in the jail.

Gammon also presents specific concerns regarding the risk that COVID-19 poses to him: he says the risk to his health is significant if he were to contract the virus.  He claims to have hypertension and asthma, that he treated with nutraceuticals. However, when he was interviewed by the Pretrial Services Officer, he described his health as good and he stated that he had not had periods of long-term hospitalization and he was not seen by a doctor regularly for any lingering illness or disease [Doc. 39].

If Gammon has moderate to severe asthma and hypertension, he would fall within the category of individuals the Centers for Disease Control (CDC) has identified as being at higher risk for more severe complications from COVID19.  *See "People Who Need to Take Extra Precautions," * www.cdc.gov.  However, the CDC website cautions that the list is being updated as more data is provided and people with medical conditions not on the list may also be at higher risk.

While Gammon has identified at least one specific underlying health condition that may place him at risk for more dire health consequences if he is infected with COVID-19, the Court is

9

unable to verify if Gammon is indeed at high risk. He does not take any prescription medications and no medical records have been provided to verify Gammon's medical conditions.  Therefore, the second *Clark* factor weighs slightly in favor of release.

### The Extent to Which the Proposed Release Plan Is Tailored to Mitigate or Exacerbate Other COVID-19 Risks to Defendant

The Bail Reform Act allows for temporary release only if the court determines such release is "necessary" for a compelling reason. 18 U.S.C. § 3142(i). In the context of COVID-19, this means the proposed temporary release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. *Clark*, 2020 WL 1446895, at *6. Thus, the court evaluates the extent to which the defendant's proposed release plan is tailored to mitigate or exacerbate the defendant's overall COVID-19 risks. *Id*.

If Gammon were to be released, he has proposed several release conditions including being released to the custody of his wife in Walsenburg, Colorado; no travel outside of Colorado except to Missouri for matters involving this case; weekly check-in with the Colorado U.S. Pretrial Service Office; no guns or ammunition in the house.  A Pretrial Services Officer in Colorado found that the home plan would be acceptable.  However, due to the location, the officer stated that it would not be possible to have location monitoring as a condition of bond. Therefore, the third factor—the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant—favors release.

### The Likelihood Defendant's Proposed Release Would Increase COVID-19 Risks to Others

In considering temporary release under section 3142(i) based on circumstances related to COVID-19, it is also appropriate to consider the likelihood the defendant's proposed release plan would increase COVID-19 risks to others, particularly if the defendant is likely to violate the conditions of release. *Clark*, 2020 WL 1446895, at *7.

A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties and expend precious resources during this pandemic to return him to custody. Gammon has previously served a term of supervised release and did not incur any violations. Additionally, when he was released from the St. Charles County Jail in November 2019, his bail bondsmen reported that he was compliant with all conditions of release.

The Court must also consider whether the defendant's release would increase risks to his family.  Gammon's wife has a chronic medical condition that would make her vulnerable if she were to contract COVID-19.  It is unknown whether Gammon is currently infected, and a desire to avoid becoming infected is what motivates Gammon to seek release. However, transmission of COVID-19 by people who are asymptotic or who have mild symptoms is, by now, well-documented.  Indeed, on April 3, 2020, the CDC recommended on www.cdc.gov that, to help slow the spread of COVID-19, everyone should wear cloth face coverings in public settings where social distancing measures are difficult to maintain. The recommendation cites recent studies that have found a significant portion of individuals with coronavirus are asymptomatic and even those who develop symptoms may transmit the virus to others before showing symptoms. Gammon has proposed undergoing a COVID-19 checkup upon release and isolating himself at a hotel for seven days before returning to his home.   Because Gammon has a stable home and the ability to isolate himself before returning to his home, this factor weighs in favor of release.

## **CONCLUSION**

For the foregoing reasons, Gammon has demonstrated that, in his particular case, COVID-19 concerns present a compelling reason that temporary release is necessary under §3142(i).  The Court's decision is based on the unique confluence of Gammon's health issues

and the other risk factors assessed in this Memorandum and Order.  Accordingly, this Order should not be construed as a determination by this Court the pretrial detention is unsafe or otherwise inappropriate as a general matter or in any specific case.

**IT IS HEREBY ORDERED** that Defendant Harvey Gammon's Emergency Motion for Pretrial Release Due to Public Health and Safety Threat Posed COVID-19 Pandemic [Doc. 30] is **GRANTED** pursuant to conditions to be set at a bond execution hearing before the undersigned in **Courtroom 3 North**, on **Wednesday, April 29, 2020**, at **10:00 a.m.**

**IT IS FURTHER ORDERED** that following the bond execution hearing, Defendant will be released subject to release conditions including, but not limited to, the following:

1. Defendant must execute a $20,000 Unsecured Appearance Bond;

2. All mandatory conditions of release included in this Court's standard "Order Setting Conditions of Release" form;

3. Defendant will quarantine at a hotel approved by his Colorado Pretrial Services Officer for a period of 14 days and must comply with all federal, state, and local COVID-19 related stay-at-home orders;

4. Defendant will be released into the custody of his wife Jessica Gammon, who will act as 3rd Party Custodian.

5. Home incarceration at the defendant's residence in Walsenburg, Colorado. The defendant shall be on 24-hour lockdown in the residence except for emergency medical visits. Any another leave from the residence must be approved by either the Pretrial Services officer or by the Court on application from defense counsel;

6. Pretrial Services supervision in the manner directed by the Pretrial Services Office.

**IT IS FURTHER ORDERED** that Gammon's Emergency Motion for Reconsideration Due to Lack of Predicate Elements to Deny Pre-Trial Release [Doc. 30] is **DENIED.**

**IT IS FINALLY ORDERED** that this Order is subject to modification or revocation by the Court at any time. The undersigned will hold a case status hearing to review this Order and

defendant's temporary release at a Bond Status Hearing on **June 17, 2020, at 10:00 a.m.** with the specific Courtroom location to be determined at a later time.

Dated the 27th day of April 2020

/s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE